

ENTERED
02/23/2017

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| HERMAN E HOFFMAN § | CASE NO: 16-32617 | |
| Debtor(s) § | | |
| § | CHAPTER 12 | |
| § | | |
| HERMAN E HOFFMAN JR § | | |
| Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 16-03222 | |
| § | | |
| HOUSTON SOCIETY FOR THE § | | |
| PREVENTION OF CRUELTY TO § | | |
| ANIMALS, *et al* § | | |
| Defendant(s) § | | |

## MEMORANDUM OPINION

The Houston Society for the Prevention of Cruelty to Animals moves to dismiss this adversary proceeding. For the reasons set forth in this Memorandum Opinion, this adversary proceeding is dismissed.

### Background

Prior to June 30, 2015, Hoffman owned a herd of 211 horses, made up of 206 registered American Quarter Horses and 5 registered American Paint Horses. As of June 30, 2015, Hoffman alleges that the horses in his herd had an aggregate value of at least $1,449,000.00. (ECF No. 1 at 4). The American Quarter Horses have a unique, historic, and valuable bloodline. (*Id.*).

On June 24, 2015, a constable in Montgomery County, Texas, applied for and obtained a warrant authorizing the seizure of Hoffman's entire herd. In the warrant application, the constable alleged that Hoffman's horses were not being adequately cared for. Attached to the application were pictures of certain of the horses. At approximately 10:20 p.m. on June 24,

2015, the constable served and executed the warrant. Hoffman's entire herd was impounded. (ECF No. 1-1).

On June 30, 2015, six days after the warrant was executed, a hearing was held before the justice court that issued the warrant. Hoffman attended the hearing. After considering evidence, the court made a finding that the horses had been treated cruelly. (ECF No. 1-3). As a consequence of the cruelty finding, Hoffman's ownership of the horses was terminated under Texas law. Tex. Health & Safety Code § 821.023(d). The court then ordered the horses to be given to HSPCA, a non-profit animal welfare organization. (*Id.*).

Hoffman appealed the justice court's ruling to the Montgomery County Court at Law. On July 30, 2015, a bench trial was held in the county court. On August 6, 2015, the county court issued a judgment consistent with the ruling of the justice court. (ECF No. 1-4).

On May 19, 2016, Hoffman filed a voluntary petition under Chapter 12 of the Bankruptcy Code. (Case No. 16-32617). On September 26, 2016, Hoffman filed this adversary proceeding against HSPCA. (ECF No. 1).

In his complaint, Hoffman seeks (1) a finding that the judgments of the justice court and county court are void for lack of subject matter and personal jurisdiction, (2) a declaratory judgment that the horses belong to Hoffman, and (3) return of the horses under a variety of legal theories, including fraudulent transfer pursuant to 11 U.S.C. § 548.

HSPCA argues that Hoffman's complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## Analysis

The statute relied on by the justice court to divest Hoffman of the horses and order them given to HSCPA is Texas Health & Safety Code § 821.022–821.023. The relevant portions of the statute are reproduced here:

> Sec. 821.022.  Seizure of Cruelly Treated Animal.
>
> (a) If a peace officer or an officer who has responsibility for animal control in a county or municipality has reason to believe that an animal has been or is being cruelly treated, the officer may apply to a justice court or magistrate in the county or to a municipal court in the municipality in which the animal is located for a warrant to seize the animal.
>
> (b) On showing of probable cause to believe that the animal has been or is being cruelly treated, the court or magistrate shall issue the warrant and set a time within 10 calendar days of the date of issuance for a hearing in the appropriate justice court or municipal court to determine whether the animal has been cruelly treated.
>
> (c) The officer executing the warrant shall cause the animal to be impounded and shall give written notice to the owner of the animal of the time and place of the hearing.
>
> Sec. 821.023.  Hearing; Order of Disposition or Return of Animal.
>
> (a) A finding in a court of competent jurisdiction that the owner of an animal is guilty of an offense under Section 42.09 or 42.092, Penal Code, involving the animal is prima facie evidence at a hearing authorized by Section 821.022 that the animal has been cruelly treated.
>
> . . .
>
> (d) If the court finds that the animal's owner has cruelly treated the animal, the owner shall be divested of ownership of the animal, and the court shall:
>
> > (1) order a public sale of the animal by auction;
> >
> > (2) order the animal given to a municipal or county animal shelter or a nonprofit animal welfare organization; or

>> (3) order the animal humanely destroyed if the court decides that the best interests of the animal or that the public health and safety would be served by doing so.
>
> . . .
>
> (g) The court shall order the animal returned to the owner if the court does not find that the animal's owner has cruelly treated the animal.

Tex. Health & Safety Code § 821.022–821.023.

1. *The state court judgment is not void.*

Hoffman argues that the ruling of the justice court, and subsequent judgment of the county court sitting in an appellate capacity, is void. Because the judgment is void, Hoffman argues that this Court is not precluded by the *Rooker-Feldman* doctrine from granting him relief.

The *Rooker-Feldman*[1] doctrine "holds that inferior federal courts do not have the power to modify or reverse state court judgments." *Union Planters Bank Nat. Ass'n v. Salih*, 369 F.3d 457, 462 (5th Cir. 2004). However, if a judgment is void *ab initio*, and not merely voidable, then *Rooker-Feldman* does not apply. *See U.S. v. Shepherd*, 23 F.3d 923, 925 (5th Cir. 1994). In Texas, a judgment is void *ab initio* if the rendering court lacked personal or subject matter jurisdiction, lacked jurisdiction to enter the judgment, or lacked the capacity to act as a court. *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985). Accordingly, the Court must determine whether a jurisdictional defect exists in the state court judgment such that it is void *ab initio*. If the state judgment it is not void, then it fully divested Hoffman of ownership of the horses. The judgment is final and not subject to collateral attack. *Shepherd*, 23 F.3d at 924. As set forth below, the state court judgment is not void.

---

[1] The extent to which the *Rooker-Feldman* doctrine remains good law is beyond the scope of this opinion. *See Exxon Mobil Corp. v. Saudi Basic Indus.Corp.*, 544 U.S. 280, 287 (2005). If the *Rooker-Feldman* doctrine is not applicable, application of issue preclusion would yield an identical result. The state court judgment that divests Hoffman of ownership binds Hoffman.

    *a. Personal Jurisdiction*

Hoffman argues that the justice court lacked personal jurisdiction over him. (ECF No. 1 at 14). Specifically, Hoffman argues that "[t]here was no process served upon [Hoffman] identifying any adversary proceeding by which *in personam* jurisdiction of [Hoffman] in justice court exists." (*Id.*). Hoffman does not dispute that he was served with notice of the hearing as required by § 821.022(c). (ECF No. 1 at 5) ("A copy of this Return of Warrant with incorporated hearing notice was given to [Hoffman] at approximately 11 p.m. the evening of June 24, 2015"). Instead, he appears to dispute that the notice of hearing was sufficient to constitute process that would give rise to personal jurisdiction. *See In re E.R.*, 385 S.W.3d 552, 566 (Tex. 2012) (a "complete failure of service deprives a litigant of due process and a trial court of personal jurisdiction; the resulting judgment is void and may be challenged at any time.").

HSPCA argues that personal jurisdiction over Hoffman existed in the justice court because (1) Hoffman admitted to being served with notice of the seizure warrant and justice court hearing, and (2) any defects to personal jurisdiction were waived when Hoffman attended the Justice Court hearing to contest the seizure of the horses.

The Court agrees that personal jurisdiction over Hoffman existed in the justice court as a result of the notice given pursuant to the statute. In any event, Hoffman did not object to jurisdiction in the justice court by filing a motion to make a special appearance. Absent such a motion, Hoffman's attendance and participation in the justice court's hearing waived any right to challenge personal jurisdiction he may have had. *See Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 201 (Tex. 1985).

b. *Subject Matter Jurisdiction*

Hoffman asserts two arguments for why the justice court lacked subject matter jurisdiction to take the steps outlined in § 821.023, divesting him of the horses and ordering them given to HSCPA. (ECF No. 17 at 9). First, Hoffman argues that the initial judgment of the justice court is void for lack of subject matter jurisdiction because justice courts have no jurisdiction over forfeiture actions. (ECF No. 1 at 9); Tex. Gov. Code § 27.031(b). Second, Hoffman argues that even if the procedures in § 821.023 do not constitute a forfeiture action, the text of § 821.023 prohibits justice courts from holding the hearing regarding the disposition of seized animals.

      i. *Section 821.023 does not contemplate a suit in behalf of the state to recover a forfeiture.*

To address Hoffman's first argument, the Court must examine the scope of jurisdiction of justice courts in Texas. Hoffman correctly states that all Texas courts derive jurisdiction from either state statute or the Texas Constitution. *In re Tex. Dept. of Family & Protective Servs.*, 415 S.W.3d 522, 529 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding). The Texas Constitution provides that "Justice of the peace courts shall have . . . exclusive jurisdiction in civil matters where the amount in controversy is two hundred dollars or less, *and such other jurisdiction as may be provided by law*." Tex. Const. art. 5, § 19. (emphasis added). Section 27.031 of the Texas Government Code, which governs the jurisdiction of justice courts, states that "[a] justice court does not have jurisdiction of: (1) a suit in behalf of the state to recover a penalty, *forfeiture*, or escheat . . . ." Tex. Gov. Code § 27.031(b)(1) (emphasis added). Accordingly, if the divestment that can occur pursuant to § 821.023 constitutes a suit in behalf of the state to recover a forfeiture, then the Court must determine whether a conflict exists between

the Texas Government Code and the Texas Health and Safety Code. The Court will first address whether the divestment constitutes a suit in behalf of the state to recover a forfeiture.

Black's Law Dictionary defines forfeiture as "(1) The divestiture of property without compensation. (2) The loss of a right, privilege, or property because of a crime, breach of obligation, or neglect of duty." Black's Law Dictionary (9th ed. 2009). The definition of forfeiture leaves little doubt that the divestment that occurred at the justice court hearing constituted a forfeiture. However, the Texas Government Code does not prohibit justice courts from hearing forfeiture actions generally. It is only suits in behalf of the state *to recover a forfeiture* that justice courts lack jurisdiction to entertain. § 27.031(b)(1) (emphasis added). Section 821.023 of the Texas Health & Safety Code does not contemplate the state recovering anything. If a divestment occurs, the court must determine what to do with the subject animals. The options available to the court under § 821.023 do not include ordering the animals given to the state. *See* Tex. Health & Safety Code § 821.023. Accordingly, while it is true that Hoffman forfeited his herd, it was not a result of a suit in behalf of the state to recover a forfeiture such that a justice court would lack jurisdiction under § 27.031(b)(1).

Because the procedures in § 821.023 do not concern a suit in behalf of the state to recover a forfeiture, this Court finds that a justice court does not lack jurisdiction to enter a judgment in a proceeding under § 821.023 as a result of § 27.031(b)(1). However, the Court must address Hoffman's second argument before it can determine whether a justice court has subject matter jurisdiction to enter a judgment in a proceeding under § 821.023.

> ii. *Section 821.023 does not exclude justice courts.*

Hoffman argues that the references to "court" in § 821.023 do not include justice courts, and consequently, justice courts do not have subject matter jurisdiction to take action pursuant to

§ 821.023[2]. It is true that § 821.023 does not specifically grant jurisdiction to justice courts in the same way § 821.022 does. In fact, while §§ 821.022, 821.024, and 821.025 expressly refer to justice courts, the reference is absent from § 821.023. *See* Tex. Health & Safety Code §§ 821.022–821.025. Section 821.023 refers primarily to "the court" generally, with the exception of § 821.023(a) which refers to "a court of competent jurisdiction." *Id.* at § 821.023(a). It is § 821.023(a) that Hoffman relies on for support of his argument that § 821.023 does not allow a justice court to conduct a hearing regarding the disposition of seized animals. (ECF No. 17 at 9).

Section 821.023(a) makes an animal owner's guilt of certain criminal offenses as found by a "court of competent jurisdiction" prima facie evidence that an animal has been cruelly treated. Tex. Health & Safety Code § 821.023(a). Hoffman argues that the court of competent jurisdiction that made the criminal finding must be the same court—or same type of court—that conducts the hearing on the animals disposition pursuant to § 821.023(d). The fact that a criminal conviction, which by its nature must be issued by a court of competent jurisdiction, constitutes prima facie evidence of animal cruelty does very little to suggest that § 821.023 requires that same court to determine liability if such prima facie evidence is absent. Hoffman's argument would be more compelling if the statute did not provide multiple indications that the § 821.023(d) hearing could be conducted by a justice court. For example, § 821.022(b) requires the court issuing the warrant to set a time within 10 days of the warrant's issue "for a hearing in the appropriate *justice court* or municipal court to determine whether the animal has been cruelly treated." Tex. Health & Safety Code § 821.022(b) (emphasis added). Additionally, should an owner divested of ownership of an animal under § 821.023 choose to appeal; they must do so "to

---

[2] Hoffman does not contest that the justice court had subject matter jurisdiction to issue a warrant to seize and hold the horses pursuant to § 821.022. (ECF No. 17 at 8-9).

a county court or county court at law in the county in which the *justice* or municipal court is located." *Id.* at § 821.025(a) (emphasis added). Finally, if an auction is ordered pursuant to § 821.023(d)(1), then under § 821.024(b) "the officer conducting the auction shall pay any excess proceeds to the *justice or municipal court ordering the auction*." *Id.* at § 821.024(b) (emphasis added). The Court finds that while § 821.023 does not explicitly refer to a justice court conducting the disposition hearing, the statute as a whole compels that conclusion.

    *c. Conclusion*

Because the Court finds that (1) divestment under § 821.023 does not constitute a suit in behalf of the state to recover a forfeiture, and (2) the § 821.023 hearing may be conducted by a justice court, the Court rejects Hoffman's argument that the state court judgment is void for lack of subject matter jurisdiction. At least one other court has reached this conclusion. In *Chambers v. Perry*, the former owner of 121 dogs and one cat challenged the justice court's subject matter jurisdiction to order that she be divested of ownership of the animals by arguing that (1) that the § 821.023 process constituted a forfeiture, and (2) that the animals confiscated were worth in excess of the amount in controversy limit under § 27.031(a). 2010 WL 1052909 at *4 (Tex. App.—Dallas Mar. 24, 2010, pet. dism'd w.o.j.). The court in *Chambers* rejected the owner's arguments holding that "the legislature passed chapter 821 of the Texas Health and Safety Code to provide justice courts with special and limited jurisdiction over actions alleging cruel treatment of animals." *Id.* at 3.

Because the state court judgment is not void, it is not subject to collateral attack. *U.S. v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994). Even if *Rooker-Feldman* is inapplicable, issue preclusion prevents Hoffman from contesting the state court's finding of animal cruelty and the resulting divestment. *Exxon Mobil Corp. v. Saudi Basic Indus.Corp.*, 544 U.S. at 293 (2005)

("Disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law."). Accordingly, Hoffman's claims for conversion, declaratory judgment, and his request that the state court judgment be vacated cannot stand.

2. *Hoffman had no ownership interest in the horses when they were transferred.*

Mr. Hoffman takes the position that the transfer of the horses to HSPCA was a fraudulent conveyance under 11 U.S.C. § 548. Hoffman alleges a constructive fraudulent conveyance, asserting that the transfer of the horses to HSCPA was for less than reasonably equivalent value, and caused him to become insolvent. (ECF No. 1 at 19). To make this claim, Hoffman assumes that he had an interest in the horses at the time they were transferred to HSPCA. However, § 548 only allows a trustee to avoid a transfer "*of an interest of the debtor.*" 11 U.S.C. § 548(a)(1) (emphasis added). Hoffman must have had an interest in the horses at the time they were given to HSPCA in order to sustain a § 548 cause of action. Section 821.023(d) is unambiguous about what happens when the court makes a finding of animal cruelty: "[i]f the court finds that the animal's owner has cruelly treated the animal, *the owner shall be divested of ownership of the animal* . . . ." Tex. Health & Safety Code § 821.023(d). It is only after the owner is divested of ownership that the court determines the appropriate disposition of the animals. *Id.*

Ownership of property is determined in accordance with state law. *Butner v. U.S.*, 440 U.S. 48, 54 (1979). Texas has determined that an owner of a live animal that is cruel to that animal has forfeited his right of ownership. That is the public policy of the State of Texas. Insofar as property rights are determined under state law, and Hoffman was found to have cruelly treated the horses, his ownership was divested. The fact that Texas leaves the animals temporarily without an owner is of no consequence to Hoffman's loss of ownership.

This lapse in ownership is fatal to Hoffman's § 548 claim. Simply, Hoffman had no interest in the property the transfer of which he now seeks to avoid. This conclusion also defeats Hoffman's claims under 11 U.S.C. §§ 542 and 550 and because these claims require ownership or possession of the property prior to the transfer.

## Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **February 23, 2017.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE